UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MOTORISTS COMMERCIAL MUTUAL                                                        Plaintiff
INSURANCE COMPANY
*As Subrogee Of*
Hinesight Properties, LLC

v.                                                                          Civil Action No. 3:24-cv-89-RGJ

J&D BROTHERS CONTRACTING, LLC                                                     Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Motorists Commercial Mutual Insurance Company ("Motorists Mutual"), as subrogee of Hinesight Properties, LLC, moves for default judgment against Defendant J&D Brothers Contracting, LLC. ("J&D"). [DE 15]. For the reasons below, the motion for default judgment is **GRANTED.**

**I.      BACKGROUND**

Motorists Mutual provided general liability insurance coverage to Hinesight Properties, LLC ("Hinesight"). [*Id.* at 2, ¶5]. According to the Complaint, Hinesight was performing construction services at a residential construction project in Owensboro when it subcontracted J&D to install roofing shingles at the project. [*Id.*, ¶7]. As part of that subcontract agreement, J&D agreed to indemnify Hinesight:

> **XX. Indemnification.** To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless the Client and Contractor along with any of their agents, employees, or individuals associated with their organization from claims, demands, causes of actions and liabilities of any kind and nature whatsoever arising out of or in connection with the Subcontractor's Services or operations performed under this agreement and causes or alleged to be caused, in whole or in part, by any action or omission of the subcontractor or anyone employed directly or indirectly by Subcontractor on Subcontractor's account related to Subcontractor's Services hereunder[.]

1

[DE 1-1 at 13]. J&D also agreed to a clause for "Onsite Damages," which stated that [t]he subcontractor is responsible for any damages to the property, rental equipment, or materials on the jobsite." [*Id.* at 15].

Hinesight leased a telescoping boom forklift from MacAllister Rentals Inc., ("MacAllister") [DE 1 at 2, ¶¶8-9], and allowed J&D to use the forklift to place bundles of shingles on the roof. [*Id*. at 4, ¶17]. As part of Hinesight's rental agreement with MacAllister, Motorists Mutual alleges Hinesight "agreed to defend and indemni[fy] MacAllister from and against, inter alia, 'loss, damage or costs . . . damages relating to property damage . . . arising out of or related in any way to the . . . operation, handling, use, transportation, possession or rental of the equipment.' . . ." [*Id.* at 3, ¶11]. Hinesight also agreed that in the event the forklift "was lost, stolen or destroyed it would pay MacAllister the then full replacement list value of the equipment at the manufacturer's suggested retail price, together with the full rental rates until such equipment was replaced." [*Id.*, ¶16].

On May 28, 2022, an employee of J&D was operating the forklift "with the boom fully extended and loaded with shingles" [DE 1 at 4, ¶19], and lifted one of the stabilizer arms of the forklift. [*Id.*]. Motorists Mutual alleges that this caused the forklift "to become unstable and tip over" and as a result, the forklift was "completely destroyed." [*Id*., ¶¶19-20]. Pursuant to the terms of the rental agreement, MacAllister sought payment from Hinesight for the destroyed forklift. [*Id.*, ¶21]. Hinesight made an insurance claim for the forklift to Motorists Mutual, [*id.*, ¶22], and Motorists Mutual paid MacAllister $243,269.87 for the "fair and reasonable value of The Forklift." [*Id.*, ¶23]. MacAllister also agreed to salvage the forklift, which reduced Motorists Mutual's exposure by $15,000. [*Id.*, ¶26].

Motorists Mutual sued J&D on February 12, 2024, for contribution, contractual indemnity, and breach of contract. [DE 1 at 5-7, ¶¶27-43]. The Summons were issued the same day, [DE 5], and the Summons and Complaint were served on J&D on February 20, 2024. [DE 11; DE 12]. Motorists Mutual moved for entry of default on March 19, 2024, [DE 13], and on April 12, 2024, the Clerk of Court entered an entry of default against J&D for failure to appear or defend, pursuant to Fed. R. Civ. P. 55(a). [DE 14]. The entry of default was docketed on April 15, 2024. [*Id.*] Motorists Mutual moved for default judgment under Fed. R. Civ. P. 55(b)(2), seeking a judgment in the amount of $243,269.87 against J&D. [DE 15 at 47].

## II. STANDARD

Under Federal Rule of Civil Procedure 55(b), a district court may enter a judgment of default against a defendant who fails to plead or otherwise defend against an action. To obtain a judgment by default, the moving party must first request that the Clerk of the Court enter a default under Fed. R. Civ. P. 55(a). *See Ramada Franchise Sys., Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004) (internal citation omitted).

Once the clerk has entered default, the Court must accept all well-pleaded allegations in the complaint as true. *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)); *see also* Fed. R. Civ. P. 8(b)(6). Based on the factual predicate in the complaint, the Court must then "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. *Fifth Third Bank v. Canfield*, No. 3:14-CV-00300-CRS, 2014 WL 3853464, at *2 (W.D. Ky. Aug. 5, 2014) (citing *PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13–CV–408–ORL, 2014 WL 2574040, at *5 (M.D. Fla. June 9, 2014)). The allegations are sufficient "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"[T]he decision to grant a default judgment is within the Court's discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citations omitted). Factors considered in determining whether to enter a default judgment include: "[1] the amount of money potentially involved; [2] whether material issues of fact or issues of substantial public importance are at issue; [3] whether the default is largely technical; [4] whether plaintiff has been substantially prejudiced by the delay involved; [5] and whether the grounds for default are clearly established or are in doubt." *J & J Sports Prods., Inc. v. Camacho*, CIVIL ACTION NO. 3:16-CV-00141-TBR, 2017 WL 2389409, at *2 (W.D. Ky. June 1, 2017).

"A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages." *Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983). As a result, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. A court will not simply accept a plaintiff's statement of damages, *see Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 911 (E.D. Mich. 2014), but rather, "must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Priority Insulation v. Triple Crown Fin. Grp., Inc.*, No. 1:05CV563, 2006 WL 1529330, at *3 (S.D. Ohio June 5, 2006) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995)).

Rule 55(b) permits, but does not require, the court to "conduct hearings or make referrals" in order "to determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B). The court may also rely on affidavits and other documentary evidence to determine the appropriate damages amount. *See Hart v. Estes*,

4

No. 3:17CV-317-CRS, 2018 WL 1914295, at *2 (W.D. Ky. Apr. 23, 2018) ("The court, in its discretion, need not hold a hearing on the motion, but may determine on the filings that default judgment on the claims is proper, and may fix damages where the plaintiff has provided sufficient documentary proof to establish the judgment amount.") (citation omitted).

### III.   DISCUSSION

The Court analyzes the allegations pled, and then damages.

    **1.   Count I—Contribution**

Motorists Mutual seeks "contribution" from J&D under Count I. However, under Kentucky law a claim for contribution among the parties to a lawsuit is rendered null by the enactment of KRS 411.182. *Sommerkamp v. Linton*, 114 S.W.3d 811, 817 (Ky. 2003) ("Contemporary apportionment requirements including KRS 411.182 provide that fault in a tort action is automatically subject to apportionment among the parties to the action. This statute renders a [] claim for contribution . . . needless."); see also *SBAV, LP v. Porter Bancorp, Inc.*, No. 3:13-CV-00710-TBR, 2014 WL 4627197, at *2 (W.D. Ky. Sept. 16, 2014) (citing *Deneger v. Hall Contracting Corp.*, 27 S.W.3d 775, 779 (Ky. 2000)). Additionally, contribution would arise only "where the parties are *in pari delicto*—that is, where they share equal fault for the plaintiff's injury." *Id.* (citing *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165 (Ky. App. 1949)).

Instead, under Kentucky law, a party may seek indemnity from another party "where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). The Court determines whether indemnity is proper by comparing the plaintiff's allegations against the alleged wrongdoer's. *Id.* at

781; *see also, Memorial Sports Complex, LLC v. McCormick*, 499 S.W.3d 700, 703 (Ky. App. 2016).

Although Motorists Mutual labels Count 1 as a claim for "Contribution" and refers to "J&D's and Hinesight's joint negligence," [DE 1 at 5 ¶29], it seeks to assign complete liability to J&D. [*Id*. ¶32]. Motorists Mutual alleges that "[a]s a result of J&D's negligent conduct in the operation of The Forklift, The Forklift was destroyed creating common liability for both J&D and Hinesight." [*Id.* ¶30]. Moreover, Motorists Mutual alleges that "[t]he direct actions of the J&D employee lifting the stabilizing arm with the boom arm extended and loaded with shingles was the proximate cause of the damage to The Forklift." [*Id.* ¶ 32]. Motorists Mutual alleges that J&D caused the accident by operating the forklift negligently, [*id.* ¶ 30], and as a result, Hinesight was liable for the damages simply due to the forklift rental agreement. [*Id.* ¶29]. Accordingly, Motorists Mutual alleges that "both parties have been in fault, but not in the same fault, towards the party injured and the fault of the party from whom indemnity is claimed [J&D] was the primary and efficient cause of the injury." *Raytheon Co. v. Ahtna Support & Training Servs., LLC*, 2023 WL 5439778, at *4 (W.D. Ky. Aug. 23, 2023). Thus, this claim is more accurately a claim for indemnity. Accepting these well-pleaded allegations as true—that J&D was the active wrongdoer or primary cause of the injury and Hinesight was only constructively or secondarily liable— Motorists Mutual has adequately pleaded a claim for common-law indemnity and is entitled to default judgment on this claim.

### 2. Count II—Contractual Indemnity

For a claim of contractual indemnity under Kentucky law, "[t]he nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself." *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) (quoting *United*

*States Fidelity & Guar. Co. v. Napier Elec. & Const. Co.*, 571 S.W.2d 644, 646 (Ky. App. 1978)). Under the terms of this contract, J&D agreed to indemnify Hinesight from liabilities "of any kind and nature whatsoever arising out of or in connection with [J&D's] Services or operations performed under this Agreement." [DE 1-1 at 13]. Furthermore, this indemnity applies regardless of whether Hinesight was "passively negligent," but J&D was not required to indemnify against claims arising from "the active negligence, sole negligence, or willful misconduct" of Hinesight. [*Id.*].

Motorists Mutual alleges that "[t]he direct actions of the J&D employee lifting the stabilizing arm with the boom arm extended and loaded with shingles was the proximate cause of the damage to The Forklift," [DE 1 at 5 ¶ 32], and that Hinesight was liable only due to the provisions of the forklift rental agreement with MacAllister. [*Id.* ¶29]. In the contract, under "Services Provided," J&D agreed to complete "Roofing – Shingles." [DE 1-1 at 9]. J&D also agreed that it was "responsible for any damages to the property, rental equipment, or materials on the jobsite." [DE 1-1 at 15]. Motorists Mutual alleges that Hinesight rented the forklift to put shingle bundles on the roof, [DE 1 at 2, ¶¶8-9], and that a J&D employee was operating the forklift when it was destroyed. [DE 1 at 4, ¶¶18-20]. Pursuant to the terms of the rental agreement, MacAllister sought payment from Hinesight for the destroyed forklift. [*Id.*, ¶21]. Hinesight made an insurance claim for the forklift to Motorists Mutual, [i*d.*, ¶22], and Motorists Mutual paid MacAllister $243,269.87 for the "fair and reasonable value of The Forklift." [*Id.*, ¶23]. According to the plain terms of the contract, the destruction of the rented forklift triggered J&D's obligation to indemnify Hinesight from liability to MacAllister for the full replacement value of the forklift. [DE 1 at 3, ¶16]. Taking these allegations as true, Hinesight and J&D were not *in pari delicto*, as they were not "guilty of concurrent negligence of substantially the same character, which

converges to cause the plaintiff's damages." *Stanford*, 948 F. Supp. 2d at 744. Instead, J&D was the "active wrongdoer" or primary and efficient cause of the injury," whereas Hinesight "was only secondarily liable." *Id.* at 745 (citing *Degener*, 27 S.W.3d at 780). As a result, Motorists Mutual has adequately pleaded a claim for contractual indemnity and is entitled to default judgment on this claim.

### 3. Count III—Breach of Contract

In Kentucky, a breach of contract claim requires the (1) existence of a contract;( 2) breach of that contract; and (3) damages flowing from the breach of contract. *Rouse v. Farmer*, 2018 WL 2078030, at *4 (Ky. Ct. App. May 4, 2018). Motorists Mutual alleges that J&D entered a subcontract with Hinesight, which included the above indemnity provision. [DE 1 at 6 ¶¶ 34-35]. Motorists Mutual alleges that J&D breached the subcontract by failing to provide either "a defense or indemnity pursuant to its contractual indemnity obligation." [*Id.* ¶¶ 36-37]. Finally, Motorists Mutual alleges that "J&D's failure to provide contractual indemnity pursuant to its Subcontract is a proximate cause of Plaintiff's damages," which is the $243,269.87 Motorists Mutual alleges it paid to MacAllister for the cost of the forklift. [*Id.* ¶38]. Accepting these well-pleaded allegations as true, Motorists Mutual has adequately pleaded a claim for breach of contract and is entitled to default judgment on this claim.

### 4. Damages

As noted above, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). Instead, when the default rests on the failure to defend, "the district court must 'ascertain the amount of damages

with reasonable certainty.'" *Simplot AB Retail, Inc. v. Bill & Scott Farms, Inc.*, 2023 WL 5670717 at *1 (W.D. Ky. Sept. 1, 2023) (citing *Vesligaj*, 331 F. App'x at 355)).

To support its request for a monetary judgment of $243,269.87, Motorists Mutual attaches an exhibit showing that it that on August 17, 2022, it paid $243,269.87 to MacAllister Rentals. [DE 15-4 at 62]. To demonstrate how this sum was calculated, Motorists Mutual submits a "Certified Vehicle Valuation" which asserts that the forklift, a 2021 CAT TL1055D, had an actual cash value ("ACV") of $194,841.00, [DE 15-4 at 64], and includes a "Summary of Damages" which lists $13,638.87 for a "7% Sales Tax on 2021 CAT TL1055D." [DE 15-4 at 60]. Motorists Mutual submits a document labeled "Parts Quote" from MacAllister for "4 "Tire[s] (Solid)," to support that replacement tires for the forklift were worth $17,800.00. [DE 15-4 at 68]. Finally, Motorists Mutual submits an invoice from MacAllister in the amount of $17,490.00 for "Recovery and Towing" of the forklift. [DE 15-4 at 70]. Added together, and subtracting Hinesight's $500.00 deductible, [DE 15-4 at 60], these numbers total $243,269.87.

Motorists Mutual "has provided sufficient documentary proof to establish" the value of the forklift and the cost for recovery and towing of the forklift. *Hart*, 2018 WL 1914295, at *2. Also, the Complaint alleges that that "MacAllister agreed to buy the salvage of the destroyed forklift thereby reducing Motorists Mutual's exposure by $15,000." [DE 1 ¶ 26]. Motorists Mutual provides no more explicit information about the salvage value or how it was considered. Nonetheless, it appears the $15,000 was deducted in reaching the replacement value listed on the vehicle bid [DE 15-5 at 66]. And Motorists Mutual submits proof that it paid $243,269.87 to MacAllister, thus it would appear the $15,000 salvage value was taken into account.

Motorists Mutual claims that replacement tires for the forklift were worth $17,800.00, but the parts quote it submits lists "4 Tire[s] (Solid)" at a cost of $5,000.00 per tire, for a total value

9

of $20,000.00—not $17,800.00. [DE 15-4 at 68]. As a result, although Motorists Mutual's Complaint demands $17,800.00 for the cost of the replacement tires, [DE 1 at 4 ¶25], this evidence would seem to prove that Motorists Mutual would be entitled to $20,000.00. However, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment'' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."). Accordingly, Motorists Mutual's Complaint caps its damages for the replacement tires at $17,800.00. *See e.g., Ayers v. Receivables Performance Mgmt., L.L.C.*, 2016 U.S. Dist. LEXIS 132875, at *23-24 (E.D. Mich. Sep. 28, 2016) ("Had [plaintiff's] complaint demanded only $2,000 in damages, [defendant] could decide to default safe in the assumption that it would owe [plaintiff] not a penny more than $2,000. In that situation, it would be improper to award [plaintiff] $12,500, even if she proved those damages at the default-judgment stage.").

Regarding the $13,638.87 for a "7% Sales Tax," the only evidence in the motion for default judgment regarding a sales tax on the forklift is a section in the "Certified Vehicle Valuation" which reads "Market Area (Tax Rate) NEW ALBANY, IN." [DE 15-4 at 64]. The Court "may judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Transglobal Invs., Inc. v. CDR Transfer Inc.*, 2012 WL 3780331, at *2 (S.D. Ohio Aug. 31, 2012) (citing Fed. R. Evid. 201(a)(2)). In addition, courts routinely take judicial notice of public records and government documents, which "includes public records and government documents available from reliable sources on the Internet." *Koenig v. USA Hockey, Inc.*, 2010 U.S. Dist. LEXIS

122809, at *4 (S.D. Ohio June 14, 2010). Thus, the Court takes judicial notice that the sales tax rate in New Albany, Indiana in August of 2022—when Motorists Mutual paid MacAllister Rentals—was 7.00%. *See* https://www.in.gov/dor/resources/tax-rates-and-reports/rates-fees-and-penalties/corporate-sales-tax-history/ (last visited October 2, 2024). In addition, $13,638.87 mathematically represents 7% of the value of the forklift ($194,841). As a result, Motorists Mutual has provided sufficient documentary proof to establish that it is entitled to $13,638.87 in damages for the sales tax.

Accordingly, based on Motorists Mutual's affidavit and documents presented in support, a default judgment in the amount requested is warranted. Because Motorist Mutual's damages are readily ascertainable and it is not seeking attorneys' fees or additional costs that cannot be readily ascertained, the Court finds no need for a hearing.

## IV.  CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Motorists Mutual's Motion for Default Judgment [DE 15] is **GRANTED.** The Court will issue separate judgment in favor of Motorists Mutual and against J&D in the amount of $243,269.87.

Rebecca Grady Jennings, District Judge
United States District Court

October 2, 2024